IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JIMMY BOLDEN, #130861 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:17-CV-138-MHT-JTA |
| | ) (WO) |
| JEFFERSON S. DUNN, et al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**[1]

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Jimmy Bolden, a state inmate, in which he challenges the ADOC policy of allowing the sale of smoking products in all state prisons and their use in the buildings at Fountain Correctional Facility and Kilby Correctional Facility as violative of the equal protection due him under the Alabama Clean Air Act and the Eighth Amendment's prohibition on cruel and unusual punishment.[2]  He also alleges that the defendants have conspired with a wholesale distributor to violate his constitutional rights.  Bolden, himself, smoked for forty years, but quit smoking in December 2016.  (Doc. 28-3, p. 22).  Bolden was housed at Kilby Correctional Facility from January 2016 until December 2016 and at Fountain Correctional

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk in the docketing process.

[2] He also alleges a First Amendment claim stating "Bolden's rights of free speech taken by each defendant." (Doc. 4, p. 3).  Bolden, however, fails to plead specific facts from which the court could analyze a First Amendment claim.

Facility from December 2016 until sometime before April 17, 2019 when he was transferred to Hamilton Aged & Infirmed in Hamilton, Alabama, which is one of three prisons the ADOC has designated as a tobacco free facility. (Doc. 4, p. 3; Doc. 35, Doc. 28-8, p. 2). Bolden names as defendants Jefferson S. Dunn, Commissioner of the ADOC; Gwendolyn Mosely, Institutional Coordinator for ADOC's Southern Region; Grant Culliver, Associate Commissioner of the ADOC; Robert Bentley, former Governor of the State of Alabama and Kay Ivey, Governor of the State of Alabama. Bolden seeks monetary damages and injunctive relief. (Docs. 1, 4, 12 and 14). Bolden sues the defendants in their official capacities stating "[e]ach named defendants {sic} are state government agents employees who are bound by Alabama law." (Doc. 1, p. 5).

The defendants filed special reports and relevant evidentiary materials in support of their reports, including affidavits and certified copies of Bolden's medical records, addressing the claims raised in the complaint, as amended. (Docs. 28, 30). In these documents, the defendants deny they subjected Bolden to unconstitutional conditions.

After reviewing the special reports filed by the defendants, the court issued an order on July 18, 2017 directing Bolden to file, on or before August 7, 2017, a response to each of the arguments set forth by the defendants in their report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. (Doc. 29, p. 1-2). The order specifically provided that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the

special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 29, p. 3). Bolden filed a timely response to the special report. (Doc. 32). Pursuant to the directives of the order entered on July 18, 2017, the court now treats the defendants' reports as motions for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of

material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to

4

prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the supporting party's position will not suffice[.]" *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the

5

material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, at *3 (11th Cir. April 24, 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . . Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving."). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (*citing Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which he lacks personal knowledge are likewise insufficient to create a

6

genuine dispute of material fact. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the

court finds that Bolden has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendant. *See Matsushita*, 475 U.S. at 587.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After this review, the court finds that Bolden has failed to demonstrate a genuine dispute of material fact in order to preclude the entry of summary in favor of the defendants.

## II. DISCUSSION[3]

### A. Sovereign Immunity

Bolden lodges claims against the defendants in their official capacities and seeks monetary damages. As a matter of law, these defendants are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id*. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

---

[3] The court limits its review to the allegations set forth in the complaint, as amended. (Docs. 1, 4, 12, 14). *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x 905, 909–10 (11th Cir. 2012) (holding that plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n.4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).  In light of the foregoing, the defendants whom Bolden seeks to sue in their official capacities, are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).  Accordingly, Bolden's claims for monetary damages against the defendants in their official capacities are due to be dismissed.

**B.     Injunctive and Declaratory Relief -- Standing**

Bolden also seeks an "emergency injunction to ban the sale of all tobacco from all state prisons." He further asks the court to direct the Governor of the State of Alabama "to enter an executive order and order prison commissioner to remove all tobacco, enter a state wide memo to stop all sales of tobacco products" in Alabama prisons. (Doc. 1, pp. 3-4). Bolden's requests for state wide declaratory and injunctive relief fail for two related reasons. First, he lacks standing to bring suit on behalf of any individuals who are not parties to this action. *Ferguson v. Thomas,* 2016 WL 3774126, at *4 (N.D. Ala. 2016) ("[P]laintiffs cannot bring claims on behalf of 'all inmates.'") (citing *United States v. Raines,* 362 U.S. 17, 22 (1960) ("[A] litigant may only assert his own constitutional rights or immunities.")) Second, due to his transfer to Hamilton Aged & Infirmed Correctional Facility, which is one of three prisons the ADOC has designated as a tobacco free facility (Doc. 35, Doc. 28-10, p. 2), Bolden's "claims for injunctive and declaratory relief relating to the conditions of [Fountain and Kilby, his previous places of incarceration] no longer present[] a case or controversy" and are due to be dismissed. *Spears v. Thigpen,* 846 F. 2d 1327, 1328 (11th Cir. 1988). (Citation omitted). Thus, the court could dismiss Bolden's complaint against the defendants on these bases alone.

However, the court recognizes that Bolden attempts to state claims based upon his exposure to excessive Environmental Tobacco Smoke (ETS) while housed at Kilby and Fountain. He claims this exposure resulted from the ADOC policy which, either by letter or in practice, allowed for his excessive exposure to ETS in prison buildings at Kilby and Fountain. He alleges this exposure has caused him injury. He brings claims for deliberate

10

indifference, equal protection and conspiracy based on these allegations. Thus, to the extent that Bolden's claims can be read to state claims for money damages against the defendants in their individual capacities, the court will address those below.

## C.   Deliberate Indifference Based on Exposure to Secondhand Smoke

Bolden attempts to bring an Eighth Amendment claim on the basis that the correctional defendants' policy of allowing the sale of tobacco products in Alabama state prisons and the practice of allowing their use in the buildings at Fountain and Kilby have exposed him to excessive levels of second hand smoke which has "caused Bolden's blood pressure to become unstable, affected Bolden's heart and Bolden's diabetic medical care." (Doc. 1, p.2). [4] The United States Supreme Court has recognized that a prisoner "states a cause of action under the Eighth Amendment by alleging that petitioners have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney,* 509 U.S. 25, 35 (1993). The *Helling* Court recognized that proof of both the objective and subjective elements were necessary to establish this Eighth Amendment claim. *Id.* Specifically, the Court stated that inmate-respondent's removal from a cell with a five-pack-a-day smoker was "plainly relevant" to whether respondent could show the objective factor that "he himself is being exposed to unreasonably high levels of ETS". *Id.* at 35-36. Further, the Court stated that

---

[4] To the extent that Bolden's filings can be read to state an Eighth Amendment claim on the basis that the correctional defendants are denying him constitutionally adequate medical treatment for his health conditions which he alleges resulted to him from second-hand smoke exposure (Docs. 1 and 32), the court has independently reviewed the more than 300 pages of his medical records filed by defendants, (Docs. 28-1 thru 28-7) and concludes that this claim lacks merit. Indeed, these records show repeated and numerous visits to prison health care providers for chest pain, diabetes control and other ailments.

11

with respect to the subjective factor, a prison smoking policy "will bear heavily on the inquiry into deliberate indifference." *Id.* at 36.

Applying *Helling*, the Eleventh Circuit affirmed summary judgment for the prison authority defendants where the inmate, unlike the inmate in *Helling,* did not allege that his cellmate was a smoker and described his health issues as concern about the future health of "his eyes, lungs and heart." *Kelley v. Hicks,* 400 F. 3d 1282, 1285 (11th Cir. 2005). The *Kelley* Court was further persuaded that the inmate failed to meet his Eighth Amendment burden because the defendants explained "that the facility had a no-smoking policy in place, and that any inmate caught smoking inside would be disciplined." *Id.* Also, the *Kelley* Court noted that the inmate had been released from prison and thus was no longer exposed to ETS at the facility. *Id.* Finally, the *Kelley* Court held summary judgment was due because Kelley failed to offer any evidence to demonstrate "that his headaches were causally linked to his exposure to ETS." *Id.*

Based on the reasoning of *Helling* and *Kelley*, this court concludes that Bolden fails to state an Eighth Amendment claim for his alleged exposure to second-hand smoke for the following reasons. First, he does not allege facts which would allow this court to conclude that he regularly came into contact with ETS while housed at Kilby and Fountain. Indeed, he does not allege that he lived with a smoker, but rather states generally that the defendants' policy of allowing the sale of tobacco products in prison buildings and their use in the buildings caused him to "inhale, and full exposure to second hand cigarette smoke." (Doc. 14, p. 3). However, the undisputed evidence before the court demonstrates that all Alabama Department of Corrections (ADOC) prisons which are not designated

12

non-smoking facilities[5] "abide by a Smoke/Tobacco Free Policy, which allows for the sale of tobacco products on site but prohibits smoking in any ADOC buildings and establishes designated smoking areas outside a building/institution where smoking is allowed.  These areas allow for a non-smoker to remove themselves from secondhand smoke.  The smoking policy is enforced to the best of the staff's ability in the areas that smoking is prohibited." (Doc. 28-10, p. 2).

Further, Bolden claims that his exposure to secondhand smoke has caused him "unstable" blood pressure and "affected" his heart and his "diabetic medical care." (Doc. 1, p. 2).  However, Bolden offers no evidence that exposure to secondhand smoke has caused these issues.  Indeed, Bolden's own medical records demonstrate that he smoked for forty years, and only recently quit smoking in December 2016.  (Doc. 28-3, p. 22). Finally, Bolden has been transferred to Hamilton Aged and Infirmed, which is a non-smoking prison facility; and thus, he no longer comes in contact with ETS.  (Doc. 35). Thus, the court concludes that Bolden fails to establish the objective component of his Eighth Amendment claim.

Even if Bolden could somehow satisfy the objective factor of this claim, the court concludes that he fails on the subjective component because Bolden offers no evidence that the defendants acted with deliberate indifference.  Bolden merely claims that defendants are on notice about secondhand smoke inside Kilby and Fountain because they have security cameras and because there are visible cigarette butts.  (Doc. 14, p. 4).  At most he

---

[5] ADOC currently has three correctional facilities, Easterling CF, Hamilton A & I, and Decatur CBF, which are designated as non-smoking facilities.  (Doc. 28-10, p. 2).

alleges imperfect application of the no smoking policy, the presence of which the Supreme Court counseled could make it "very difficult to demonstrate that prison authorities are ignoring the possible dangers posed by exposure to ETS." *Helling,* 509 U.S. at 36-37. Indeed, Bolden claims at most a negligent failure of defendants in enforcing the policy of no smoking inside Kilby and Fountain. The court holds that, as a matter of law, this allegation fails to meet the deliberate indifference standard. Id. at 1285 ("Mere negligence, however, is insufficient to establish deliberate indifference.) (Citation omitted). Accordingly, the court concludes that summary judgment is due to be granted on Bolden's Eighth Amendment claim.

**D.     Equal Protection based on Alabama Clean Indoor Act**

Bolden also attempts to bring a claim for relief under the Alabama Clean Indoor Air Act § 22-15A-1, *et seq, Alabama Code* based on his allegation that the defendants' policy of allowing the sale of tobacco in Alabama prisons and the use of tobacco in the prison buildings deny him equal protection under this Act. Specifically, he points to § 22-15A-6 (5) which states, in part, as follows:

> (a) Pursuant to this section, the person in charge of a public place may designate an area for the use of smokers. Notwithstanding the foregoing, a smoking area maybe not be designated and no person may smoke in any of the following unless the area is enclosed and well ventilated:  . . .
> (5) Government buildings.

Stated another way, Bolden claims that he, as a prisoner, is treated differently than non-imprisoned people because the ADOC policy fails to ensure the Alabama Clean Indoor Act is enforced inside prison buildings. However, the undisputed evidence demonstrates that the ADOC Smoke/Tobacco Free Policy, which allows for the sale of tobacco products

14

on prison sites, prohibits smoking in any ADOC buildings and establishes designated smoking areas outside where smoking is allowed. (Doc. 28-10, p. 2). Thus, the ADOC policy appears on its face to comply with this Act. Further, Defendant Culliver testified by affidavit that "[t]he smoking policy is enforced to the best of the staff's ability in the areas that smoking is prohibited." (Doc. 28-10, p.3). Thus, the court concludes that the undisputed facts show Bolden's claim lacks merit. Further, the court notes that at least one district court has dismissed a claim brought under this Act holding that the "Act contains no private right of action under which the plaintiff[ ]may proceed." *Ferguson,* 2016 WL 3774126, at *3.

### E. Conspiracy Claim

Bolden also alleges that the defendants have conspired with tobacco wholesale distributors to expose non-smoking inmates to unacceptable levels of ETS. This claim fails as a matter of law because Bolden has failed to "show that the parties 'reached an understanding' to deny plaintiff his or her rights . . . [and] prove an actionable wrong to support the conspiracy." *Bendiburg v. Dempsey,* 909 F.2d 463, 468 (11th Cir. 1990). Indeed, neither the complaint nor Bolden's subsequent pleadings identify any agreement or action taken by the defendants with tobacco wholesale distributors to expose him to unacceptable levels of ETS. Thus, the court concludes that summary judgment is due on this claim.

### F. Respondeat Superior

Finally, the court recognizes that Bolden names as defendants the ADOC Commissioner and Associate Commissioner, ADOC Institutional Coordinator, the current

Governor and former Governor. To the extent he alleges that the failed enforcement of the ADOC no smoking policy violates state law and the defendants are liable to him for this violation, this claim lacks merit for the following reasons. First, Bolden alleges no direct actions of the named defendants in failing to enforce the no smoking policy in prison buildings. Indeed, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Second, the plaintiff's allegations fail to demonstrate a causal connection between the defendant's actions and the alleged constitutional violation. *Hendrix v. Tucker,* 535 F. App'x 803, 805 (11th Cir. 2013).

The law is well settled; "[a] plaintiff may establish a causal connection by showing that (1) 'a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so'; (2) 'the supervisor's improper custom or policy led[d] to deliberate indifference to constitutional rights'; or (3) 'facts support an inference that the supervisor directed the subordinates to act unlawfully and knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (Citation omitted). Indeed, "[t]he standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." *Id.* (Citation omitted).

After a careful review of the Complaint and supporting documents, the court concludes that Bolden fails to plead any facts supporting a finding of "widespread abuse" which could have put defendants on notice that he was exposed to excessively high levels

16

of ETS.  Indeed, Bolden merely claims that defendants are on notice about secondhand smoke inside the prison because they have security cameras and because there are visible cigarette butts.  (Doc. 14, p. 4).  Furthermore, for the reasons discussed above in Section C, the court concludes that Bolden has failed to demonstrate that the ADOC no smoking policy or its failed enforcement have resulted in deliberate indifference to his right to be free from excessively high levels of ETS, *see Helling*, *supra*.  Finally, the court concludes that Bolden fails to plead any facts from which this court could infer that any defendant directed prison personnel to act unlawfully toward Bolden or knew they would act unlawfully with respect to his right to be free from excessive exposure to ETS.  Thus, the court concludes summary judgment is due to be entered in favor of all the defendants and this case dismissed.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motions for summary judgment (Docs. 28, 30) be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be DISMISSED with prejudice.

4. Costs be taxed against the plaintiff.

On or before **February 14, 2020** the parties may file objections to this Recommendation.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's Recommendation shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 31st day of January, 2020.

/s/ Jerusha T. Adams.
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE